Jacksonville. Judge Rosenbaum and I have been very happy to come up and be part of this panel and today we're very happy and honored to have with us one of our colleagues from South Florida, Judge Jose Martinez. He's been on the district court in Miami since 2002, is that right Jose? Since 2002 and he's a very experienced lawyer and trial judge and we're very, very happy to have him here with us to help us out with our cases. He sat with us on Wednesday and he's finishing up today so thank you very much for helping us out Jose. You know our lighting system, when the yellow light goes on that means your time is drawing to a close so you can start to bring your remarks to a finish. If we take you beyond the light then don't worry, just keep talking to us as long as we keep going. And with that we'll begin with our first case which is 16-17560, F.F.J. et al. v. Bruce Perry et al. Who's arguing first? Mr. Kitchen? Okay, whenever you're ready. You're going to split up your time, you're going to take 10 minutes, Mr. Ferreira is going to take 3 and then you're going to reserve 2 for rebuttal, right? Correct, Your Honor. Okay, thank you. Good morning, Your Honors, may it please the court, my name is Damon Kitchen. Our law firm represents the defendant appellant Bruce Perry in this appeal. Our position is that the district court erred when it converted Mr. Perry's motion to dismiss into a motion for summary judgment and deferred ruling on the qualified immunity defense raised in that motion. In the interest of time, it's not my intention to recite the facts or go through all the in the amount of time that I have, I'd like to focus on addressing why we believe appellants Perry and Brady are entitled to qualified immunity. Well, you want us to resolve, if you are right about the district court having committed error, you want us to conduct that qualified immunity ourselves or you want us to send it back to the district judge for resolution? After all, the district judge has a magistrate judge's report on your motions. Your Honor, we would ask, similar to what this court has done in Collins v. School Board of Dade County, which also involved a deferral of a qualified immunity motion, that the court decide it. These are legal issues that the court can decide. If this matter is sent back to Judge Corrigan, Judge Corrigan will make a decision either way. One side or the other is going to appeal it. We'll just be back in front of you a year from now, perhaps later. This appeal has been pending already 19 months. Qualified immunity, as we all know, is a defense that is supposed to be resolved at the earliest point in the litigation. These are purely legal issues, issues raised in qualified immunity. We would ask that the judges do what has already been done by this court in the Collins case over 30 years ago. I know it can be done. There's no issue about that. The question is what you preferred, and you pulled this. Yes, Your Honor. Why don't you go ahead and move to your argument then? As Your Honors know, qualified immunity, according to the Supreme Court, protects government officials of performing discretionary functions. Insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Here, the defendants were performing discretionary functions. That's not even disputed by the appellees. Therefore, the burden in qualified immunity shifts to the plaintiffs, or the appellees in this case, to show that a constitutional right was violated, and furthermore, that that right was clearly established at the time the right was allegedly violated. What do you understand the asserted constitutional right to be? Put aside the clearly established part of it. What do you understand the constitutional right at issue to be? We would argue there isn't one, but their argument, Your Honor, is . . . What is it asserted to be? What do you think it is as claimed by the plaintiffs? That they have a right to be protected from harm while they're in the care of these DCF agents, and we would dispute . . . You don't think that there's any . . . again, putting aside the clearly established prong of qualified immunity, you don't think that for children who are in DCF custody, there is any constitutional obligation on the part of the state agency to keep those children free from harm? I wouldn't say that, Your Honor. What I would say is these children were not in DCF custody. DCF was making decisions, according to the Second Amendment complaint, about their care and their placement, but these children were not in either legal or physical custody of the children. Legal custody, as you know, in Florida and in most states, is defined by a statute. A judge has to determine that. This is not analogous to a foster care situation where a judge has made a determination and placed people in a state program where they're not with family, but with foster parents, which have been licensed and legally approved. Again, the cases of DeShaney in this court's case, as in Wooten and Powell, indicate that appellees have no constitutional right from protection from a private harm, in this case, a fine. Let me just ask you something. How is it that they wound up in the custody of the grandmother? Weren't your clients involved in the decision to send them to live with the grandparents? Well, Your Honor, if you look at the attachment to E to the Second Amendment complaint, which is incorporated by reference, what that states, this is the statement of claim, Richard Fowler Sr. requested that the children be placed with their maternal grandfather, Clayton Woods. Clayton Woods is home until Mr. Fowler was released from jail. So there was no decision on the part of your clients in any way that resulted in their being placed there? Your Honor, the decision was to honor the parents' wish to place the children with Clayton Woods. Well, that being the case, let's just talk hypothetically. What if your clients had reason to know that the person that the parents wanted the children to be placed with was a sexual molester, a proven sexual molester? Would your clients have any obligation to do anything in that situation, or would they just be completely free to give the children to that person? Your Honor, I think in that situation, they still have to determine what the wishes of the parent are. They have to follow the wishes of the parent no matter how much harm or peril the wishes of the parent may place the children in. No, Your Honor, but I don't think that's the situation. So what's the line and what's the standard? Well, I think in that situation, they would have to bring this to the attention of a court, and a court would need to make a determination as to that. So they do have some responsibility here. They can't just do whatever they want. No, Your Honor, and furthermore, what DeShaney says is— I guess I'm trying to figure out where that line is drawn. That line is drawn in DeShaney. DeShaney says, A duty to assume some responsibility for a person's safety and well-being occurs when the state takes a person into custody and holds them there against their will. But, see, that just begs the question, right? That asks the same thing again, which is, isn't there a responsibility not to place a child with a known harm to that child, not to make a decision that the child will go someplace where there is a known harm, a known imminent danger to that child? We are. I'm not saying that's this case. But you're saying that there's no constitutional right whatsoever unless the child is actually in the custody of your clients. And I'm trying to explore that a little bit because I'm not sure that that's correct. Well, Your Honor, what I'm saying is when the state intercedes to the point in which, through incarceration, institutionalization, or some similar restraint of personal liberty, they deprive that person of their ability to fend for themselves. Now, we're talking about children here. Right, and so I don't think there's any question that when we get to the point of custody, right, that your clients could be on the hook. My question is, before we get to the point where the children are actually in the custody of your clients, is there some point before that where your clients can be held responsible for violating the children's constitutional rights if they place them with a known imminent danger? Your Honor, I would say that that is a fact-specific situation. But in this particular instance, there wasn't that knowledge. There was some knowledge that the grandmother had been arrested several years earlier for a sex offense. But there was no showing that she wasn't fit to care for the children simply because of that arrest several years earlier. Mr. Kitchen, you said you want us to decide this issue. But if you keep pressing, and I speak only for myself. But if you keep pressing the point that these children did not have any constitutional rights whatsoever that had to be respected by your clients, you're barking up the wrong tree. It's a different thing to say on the facts of this case. As alleged, there was no constitutional violation because of what was known or not known by the defendants. That's a very different argument than trying to say that children who are placed in custody in part by your clients have no constitutional rights. For example, in the scenario that Judge Rosenbaum laid out. Your Honor- Those are two very different things. I would say that that right is triggered in a situation when the individual has sufficient dominion and control over those children's rights. You're saying there could never be a violation here no matter what the facts. I'm saying that- You give them to a person who is a known child serial rapist. Known, convicted, released from custody after 20 years in prison. And a parent says, yeah, let my brother have them. And you check and you see that the brother has had those problems in the past, just been released from custody. And you say, yeah, we're going to accede to the parent's wishes. We're going to give them to the parent's brother. You say that's okay constitutionally. No, Your Honor. I'm saying that their duty to act occurs when the state takes sufficient dominion and control over the children so that they can't protect themselves. In this situation, the children were always with the grandfather or the grandmother. And in that situation, this is exactly the case in Powell where the DCF worker gave the child from the- Great aunt said, great aunt, give the child to the grandmother. And this court said there wasn't sufficient dominion and control to create a substantive due process liberty interest. I'm saying this case is the Powell case, Your Honor. And furthermore, in the 10 seconds that I have left, I would say that even if there was some question as to the constitutional duty, it certainly wasn't clearly established based on DeShaney, Wooten, and Powell. Those situations are clear. If anything, they had a right to rely on that, Your Honor, those decisions. All right, Mr. Kitchen. Thank you very much. You've saved your time for rebuttal. Mr. Ferreira. Good morning, court. Edgardo Ferreira, and I represent Reginald Brady. I'm not going to belabor too much of the point of the cases that Mr. Kitchen went over. But I'd like to underscore two points in this case. One is that knowledge aspect of it. Just because the grandmother, Swearegan, was in the past, 14 years ago I believe it was, a convicted sex offender, doesn't mean that she was unfit at the time that the children were given to her to take care of them. If you look at the exhibits that were attached to the complaint, one of them is a case report regarding Ms. Swearegan. And what it says is that she had no more run-ins with the law, that she was taking her psychotropic medication, that she was doing better and she was getting out of the, I believe she was mentally, she said she was mentally insane and she was getting out of that. She was on psychotropic medication too in addition to her past troubles? Yes, Your Honor, she was. This is the person you released the kids into custody into? Yes, Your Honor, but keep in mind this was several years ago. Just because she's taking psychotropic medication, just because she's got schizophrenia, doesn't mean that she, at that time, was unfit to take care of the kids. Well, what analysis did, according to the complaint, did the defendants do with regard to her fitness at the time of the alleged action? Your Honor, there is an allegation that there was an interview that Mr. Brady conducted of Ms. Swearegan. And what did that interview allegedly say or provide? Your Honor, that is not alleged in the complaint. Now what we do have is that one report by a case manager of Ms. Swearegan when she had her legal issues. And that says that she was getting better, that she was taking her medication, that she no longer had any issues with regards to her schizophrenia. When was that report dated compared to the events? I would say anywhere between 10 to 14 years ago, Your Honor. I can't rely on that. But for the same reason is that just because that happened 10 to 14 years ago, does it mean that that's what is occurring today? But the question of – there's a big question about causation too because I think the plaintiffs would be – but I think the plaintiffs would be in a very different situation if the injury to them had been caused by the grandmother, given the sort of things that she had been in trouble with in the past. And that's not exactly what happened here. But- Your Honor, and I agree with you. And my second point, what is causation? This case screams, screams of negligence. That may not be enough. I understand what you're saying, but it's an embarrassment. It's an utter embarrassment to the care that we provide for children in our state. Again, that says nothing about how this case is going to get decided. And the three of us will look at the applicable law and we'll do our best to get the case right. That's just my personal view. That's why you keep getting sued. I understand, Your Honor. And just to finish up, the last issue was causation. And this would be a totally different case if the children had been molested, if the children had been injured as a result of a schizophrenic attack, but that's not what occurred in this case. This was one of the kids was playing with a lighter and caused a fire. And I think those are the two points that I wanted to point out to this court. And otherwise, unless you have any other questions, I will sit down. All right. Thank you very much, Mr. Ferrer. We appreciate it. Mr. Woolsey. Mr. Woolsey, you've got problems. Judge, I think I've solved some of those problems. Well, problem number one is that the district court didn't do what it was required to do. And I can understand what the district court was trying to get at given the record that it had. But defendants are entitled to have their motions to dismiss on qualified immunity grounds decided on the merits. If the district judge thought that their motion didn't stand up, then what you should have done was deny it and say, we're moving forward and let them decide whether or not they're going to take an appeal. But you can't be telling defendants that they can't file qualified immunity motions because you, as a district judge, think discovery is warranted. To me, that's a problem. Is it not? Judge, I think there's case law that supports the district court's decision in that, as this court's aware, there's two ways that this court could confirm what Judge Corrigan did, and that's that, first, it wasn't a final ruling. We've cited case law. The final ruling is that he did not decide, and he denied them, whether rightly or wrongly at the end of the day, denied them the chance to have qualified immunity decided. It was put off to another day. Judge, I understand that, and we've cited the case in the Seventh Circuit, Karame v. Rollins, which I think is consistent with the whole reason this is important, is that this is not like what the court regularly sees with these 1983 police officer cases where that's the majority of the cases on qualified immunity. This is different. There was no underlying police report saying what the officer knew, why an officer arrested. We didn't have discovery. There's not a jury trial. There's no depositions. We were very cautious in our pleadings pursuant to Rule 11, and the district court determined, just like in Karame, that because the defendant's entitlement to immunity depended on what he knew, set that claim aside briefly and allowed the limited discovery, which is what Judge Corrigan did and we believe is appropriate. In addition, the facts outside the four corners of the complaint absolutely came in. The defendant's own attorney in the hearing said, we've obviously gone outside the four corners of the complaint. There were discussions all about what did Brady know when he did it. No, but that was in response to the district judge's question. They did not assert anything, as far as I can tell, anything outside of the four corners of the complaint in moving to dismiss on qualified immunity grounds, right? I don't completely agree. They referenced conversations with the family about mental health, and also they went into details about the foster care environment, the legal process, how they were removed, which were not. In their motion to dismiss? In their oral arguments. I know, but that's because the judge started asking about all of these things. Yes, Your Honor, and if the court determines that there was an error there, then I'm in agreement somewhat with the defendants that this court could look at the qualified immunity issues. I want to point out something extremely important. That's that we have sought leave to amend in the district court. We've conducted discovery. Brady knew all about this. Isn't that a good reason for us to send it back to the district court? I mean, it seems to me like the case law is pretty clear, that the defendants are entitled to a ruling one way or the other on their motion to dismiss because, as you know, qualified immunity is an immunity from suit, not just from liability. And the Supreme Court has told us that if a defendant is entitled to qualified immunity and the suit is allowed to go forward, then the defendant loses the protection that qualified immunity is intended to provide. So don't we need to send it back? And especially if you're seeking to amend the complaint, why should we decide this case in the first instance? Absolutely one option that this court has that would make some sense. The other option, in my opinion, is if the court determines there was error below, it could look at qualified immunity. The amendment really addresses deliberate indifference and the causation issue. It talks everything about what Brady knew about this lady. A proposed amendment? A proposed amendment. You filed that before there was an appeal? The appeal was – discovery was stayed. I wasn't allowed to conduct discovery. This court allowed discovery to proceed, so did the district court. We took depositions. I deposed the defendants. We learned what we thought would be the truth. That's what they knew all about this lady's mental health history. There's a proposed amended complaint in the record right now? It's proposed, and Judge Corrigan deferred ruling on it. But the question is, at the time that the order was issued that's on appeal right now, was there a request by your clients to amend the complaint? Not at that time. Well, isn't that a problem? Because how can we rule on what happened afterwards? It's not before us. That's why the option would be to send it back, or I want to volunteer, that the amendment focuses mostly on deliberate indifference. Not that this court wants to piecemeal, but it could say we've determined in this scenario where a child is involuntarily removed by DCF, by the state, there's a constitutional duty. And it's clearly established, based on all the case law, that every single case says with involuntary removal, there's a constitutional duty. So the court could look at the first two prongs, kick it back, allow the amendment, and then could address the issue of deliberate indifference. Judicial efficiency may not support that. But we don't have a pending motion, and nor could we, have a pending motion for amendment before us. And the motion to amend that you filed is not in the record to the point that's on appeal. So, I mean, and then you're talking about doing, as you just described it, a piecemeal approach. Is there some reason why it would be better for us to decide this issue? I mean, it sounds like, from what you've said, that if we were to decide that the defendants are entitled to an immediate ruling on their motion to dismiss, that we should send the whole thing back for the court to consider it all at once and take care of it in one neat package. I do think that this court could look at the current complaint, and we did allege that they knew about her mental health history. We were very cautious. We didn't go a step further. We said they knew or they should have learned. We now know they knew. And so this court could look at that allegation, determine there's a constitutional duty, determine it's clearly established, and determine we've alleged deliberate indifference, and we move past this first stage on to summary judgment level. This court could do that, or it could send it back to Judge Corrigan to determine the issues and rule on the motions to dismiss. I want to point out a couple factors that the defendants talked, that it's not the actual allegations. They phrased this as if the parents put it with the grandparents. These are two different people. The only thing they have in common is 30 years ago they had a child together. They've never been married. The grandmother had a fiancé at the time. The parents select the grandfather and put the children with the grandfather. Then the defendant, the state, comes in, involuntarily removes those children and places them with the grandmother. Those are the allegations. So I wanted to correct the defendant's recitation that the parents left them with these grandparents. That would be inaction. Their arguments would be way better based on the case law because there's no constitutional duty if there's inaction by the state, and you've got to look at the special relationship problem. According to your complaint, the complaint that we have in front of us now, what were the steps that led to the placement? The father has the 10-month-old child, and he is arrested. Jacksonville Sheriff's Office comes in, takes possession of the 10-month-old child. By Florida statute, that officer has to follow different things to what to do with the child. That statute is 39.401. Part of the prong of that is release the child to DCF or an adult that DCF must confirm. So immediately, DCF takes the statutorily obligation to get involved in at least one of the child's placement. Then DCF, their agent, goes to the person that takes the child from the arrest scene, says take the child to where the other three children are with the grandfather, which is where the parents had left the children, with the grandfather at his home. The defendant, Reginald Brady, goes to the home. He checks out the home. He inspects it to make sure it's safe. He talks to the grandfather. He leaves the kids there. He then interviews grandmother, talks to grandmother. The next morning, he tells grandmother, take the children to their home, a different house, and they'll be there with you. So he involuntarily directs. Whose house? From the grandfather's house. No, to which house? To the parent's mobile home that's been vacant for just a week now. Okay. And says grandmother. Where the father lived. Where the father had lived. Right, okay. Says grandmother, you take them over there. Knows grandmother's the sole person that's going to care for them. So we've alleged all those facts that are all consistent with actual action in voluntarily removing these children and placing them. The court could go on to the special relationship test. We feel like that Mr. Brady knew all about these children, knew that these victims, as opposed to the public at large, faced a special danger. He had a meeting after he placed these children with the grandmother. He had a meeting where he reviewed her criminal history. We now know he reviewed her mental health history. He wrote, it was documented during the meeting, I have concerns. He made the inference that there was a substantial risk of harm, and he said, I want to remove from the grandmother. Well prior to the fire. He then goes over to the home, and it's too late. The fire's already happened. So we believe there's a clear constitutional duty. The defendant's main argument is that a child has to be in a foster care or has to be a blood relative. Not one of the cases ever takes that step to make the analysis that it needs to be a blood relative. In fact, the Shaney case, the main case they rely on, completely contradicts the defendant's statement. The ultimate decision is was there involuntary removal. The Shaney case found that the child was with a father. There were some complaints about the father. There was no involuntary placement. There was inaction. The state played no part in the dangers facing the child. So they determine, because there's no involuntary placement, no constitutional duty. They then come to the next prong. Is there a special relationship? If you accepted the defendant's position that it had to be a blood relative, the conversation would end in DeShaney. It had been over. They go on to analyze in a close 4-3 decision whether or not there was a special relationship with this child, which contradicts the whole argument that if it's a blood relative, then there's no constitutional duty. In that close decision, it makes sense what the court in DeShaney did in that every time there's a complaint about a parent, DCF, the state, does not have an obligation of constitutional duty. That would open the floodgates every single time somebody called and said, this is a bad father, this is a bad mother. Common sense also tells us that this whole blood relation argument doesn't make sense and that blood relatives can be foster parents. In addition, imagine that hypothetical, that two DCF employees remove a child involuntarily, take them to a home, open the door. It's the worst scenario you could ever imagine, the most dangerous scenario, and they conclude, we don't have a constitutional duty because that person's an aunt or an uncle or a cousin. Common sense disputes their position on that. They rely on Powell. The case in Powell was where a foster care person had the child. All the foster care person did was allow an aunt to take the child to a grandmother. The grandmother was told, do not let this child go back to the mom. Grandmother ignores the instruction, takes the child back to the mom, the mom kills the child. That was not the foster care person. Here you're, and we may be getting ahead of ourselves because, like you said, there are different ways to resolve the issue we have before us. But her prior criminal issues, are they part of your claim of causation at the end of the day? I depose DCF's mental health corporation. No, no, no, no, we can't. All right, yes. And look at anything after the fact. The reason they are is because there's arrests for trespassing, burglaries, things where she's trying to find a home. All the records, the police reports, indicate that there were Baker Act mental health issues. And so, yeah, the arrest history is consistent with our theory because they knew, and admittedly this is not in the initial complaint because we didn't know about what Brady knew. She didn't care for herself, so how could she care for her kid? Four children under the age of seven by herself. I have difficulty taking care of her. What was her age at the time? I believe she was in her mid-50s. Clearly, the deliberate indifference standard was where the district court had the most struggle, and we talked about causation. She's a sex offender. Does that impact this? Does that tie to the fire? And I understand that analysis, and the defense has talked about it today. That's why this amendment is so important is because we still think that there was enough with the status of a sex offender and what they knew, but there's so much more about the mental health that they were actually aware of and had actual knowledge of. So we believe that the deliberate indifference standard has been met. And one thing that's important, Brady actually made this inference. He made the inference that there was a danger. He documented during the meeting, I want to remove from Ms. Waringen because of what he knew. And finally, with respect to deliberate indifference, the Supreme Court has said in Farmer that whether the defendant had the requisite knowledge is a question for a trier of fact. So the question for this court is, is it a substantial risk to place four children under the age of seven with someone who's a convicted sex offender, violated sex offender probation, had been found legally insane? There's additional facts in the new complaint about her mental health history and what he knew, and that's reckless. That's deliberate indifference, and we believe that there's clearly a constitutional violation here, and we've properly alleged that. All right, thank you very much, Mr. Woolsey. Mr. Kitchen? First of all, Your Honor, with respect to whether or not this should go back to the district court because there's an amended complaint, well, as Mr. Woolsey said, the amendment goes mainly to deliberate indifference. As the magistrate judge found, the reason he did not allow the complaint, he recommended the complaint not be allowed to be amended was because regardless of what they say with respect to the deliberate indifference, it's not going to change the fact that the law is clearly established. The law is not clearly established. If anything, Your Honor, we would argue that the cases of DeShaney, Wooten, and Powell are sufficiently clear that someone in Brady and Perry's position would think that they didn't have a constitutional duty. You don't think there's any constitutional obligation under the circumstances? I'm sorry, Your Honor. With regards to a placement decision? Your Honor. That's how you began your argument earlier on, all guns blazing. Your Honor, I'm saying Brady and Perry, under the circumstances of this case, as DCF officials, should be allowed to reasonably rely on what happened in Powell. But can you answer Judge Jordan's question? Okay. I just want to try to get an answer on this. And I understand you're zealously representing your clients the way you should, so this is not an antagonistic sort of thing. It's one thing to say, on this record, as alleged in the second amended complaint, there was no constitutional violation, and even if there was, there was no clearly established constitutional right. I understand that argument. It's quite another thing to say, and I want to see if that's what you're asking us to find or hold, that DCF employees in your client's position have no constitutional obligations with regards to placement decisions. Your Honor. Is the latter what you're asking us to hold or no? We're saying that under the circumstances of this case, there was no constitutional duty that should have been apparent to anyone in your position. Okay. And that's, I'm agreeing with the former issue, not the latter. I'm not saying there's not a set of circumstances where a constitutional duty might not exist. I'm saying they didn't exist in this particular situation. And, Your Honor, if I may. Let me tell you the problem with what you may want us to do procedurally, not substantively. Okay. And let me tell you from the perspective of a district judge. All of us have been district judges and Judge Martinez still is in his daytime job. There's been discovery. We can't unscramble the egg. If we rule on qualified immunity and the case goes back to Judge Corrigan and there's a motion to amend the complaint and make the dismissal to be without prejudice, what do you think he's going to do? Your Honor, I would think that if you rule on this and you find that there's no clearly established law, then the game is over. On the facts alleged, but there may be different facts alleged now that there's been discovery and more information. I must be articulating. I'm saying what Judge Toomey said. There's no way to allege facts to show that the law, if a constitutional duty existed, was clearly established. So again, you're going back to the question and you're saying that there cannot be any constitutional violation no matter what the facts that was clearly established at the time that your clients did what they're alleged to have done, right? Your Honor, I'm saying there aren't any cases that would create a bright line constitutional duty under the circumstances in this case. That is what I'm saying. I think we're saying the same thing in slightly different ways. Okay, Mr. Kitchen. Thank you all very much. It's been very helpful and we appreciate the argument.